NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL HINES and JOSEF TOLLIVER, | ) ) ) ) | |
| Appellants, | ) ) | Supreme Court No. S-15186 |
| v. | ) ) ) | Superior Court No. 3AN-12-09488 CI |
| DONALD GARNER and JESSE MARTIN, et al., | ) ) ) ) | MEMORANDUM OPINION AND JUDGMENT* |
| Appellees. | ) ) ) | No. 1527 – January 7, 2015 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Michael Hines and Josef Tolliver, pro se, Anchorage, Appellants. Jim C. Wilkson, Farley & Graves, P.C., Anchorage, for Appellee Jesse Martin.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

Michael Hines and Josef Tolliver appeal from the superior court's summary dismissal of their employment claims and subsequent denial of their motion for reconsideration. When reviewing the denial of reconsideration of a grant of summary

---

\*      Entered under Alaska Appellate Rule 214.

judgment, we review the merits of the summary judgment ruling.[1] We review the merits of the grant of summary judgment de novo.[2] After independently reviewing the record before the superior court[3] and considering the arguments on appeal, we AFFIRM the superior court's summary dismissal of Tolliver's and Hines's claims for the reasons set forth in the superior court's written decision, attached as an appendix.

---

[1]     *Newton v. Magill*, 872 P.2d 1213, 1215 (Alaska 1994).

[2]     *Christensen & Scott v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[3]     We note that during the appeal Hines presented for our consideration a document that was not presented to the superior court during the summary judgment proceedings. Because we are reviewing the superior court's decision based on the record that was before the superior court, we do not consider the document. *See* Alaska R. App. P. 210(a) (stating that the record on appeal consists of the trial court file and that material not presented to the trial court may not be added to the record on appeal).

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

JOSEF TOLLIVER and )
MICHAEL HINES, )
     )
         Plaintiffs, )
     )
       v. )
     )
DON GARNER, COMPLIANCE )
SERVICE CORPORATION, )
JESSE MARTIN, and )
INDUSTRIAL ROOFING, INC., )
     )
         Defendants. )
_____)    Case No. 3AN-12-09488 CI

DECISION AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT[*]

## I.     INTRODUCTION

       The subcontractor for a roof removal job orally hired two laborers. They were informed the job would take about five months. The subcontractor alleges it fired one for inefficiency, and it laid off the other pursuant to a reduction in force. Did the subcontractor's mention of the job's anticipated duration create a contract for a definite term rather than an at-will contract? Is perception of poor performance a sufficient basis for termination?

---

[*]     This decision has been edited to conform to the technical rules of the Alaska Supreme Court, and internal citations have been omitted.

## II. FACTS AND PROCEEDINGS

Plaintiffs Josef Tolliver and Michael Hines filed a pro se complaint against defendants Don Garner and Jesse Martin alleging wrongful termination. Garner and Martin answered the complaint, asserting as an affirmative defense that the actual employer was Compliance Service Corporation (CSC) rather than either individual. Plaintiffs moved to amend and filed an amended complaint against "Don Garner (Compliance Service Corporation), Jesse Martin (Industrial Roofing)." The court granted amendment on December 20, 2012. Garner and Martin reasserted their prior answer. Plaintiffs did not serve the corporations pursuant to Civil Rule 4. But defendants' Motion for Summary Judgment implicitly recognizes that both corporations are validly if inartfully named and seeks summary judgment as to all defendants.

Defendants move for summary judgment that the actual employer was CSC, seeking dismissal of defendant Industrial Roofing, Inc. (Industrial) and the individual defendants because they are not employers liable for wrongful termination. Secondly, CSC seeks a finding that plaintiffs were employees at will, not contract employees for a specific term. Thirdly, CSC seeks summary judgment that CSC fired Hines for a good-faith reason, and that CSC laid off Tolliver pursuant to a reduction in force.

Defendant Jesse Martin avers that he is the president of Industrial. Industrial contracted to perform roofing services on two Mat-Su schools. It then subcontracted with CSC to provide demolition labor. CSC rather than Industrial hired laborers and managed their performance. Only CSC had the power to terminate these laborers. Martin avers that on July 21, 2012, he saw plaintiff Hines take 20 minutes to wrap an extension cord. Martin voiced displeasure to CSC's president, defendant Don Garner. Subsequently, the work slowed, and CSC laid off some employees.

CSC contracted with Industrial to provide roof-demolition labor. CSC's president, Garner, hired Hines as a laborer on July 16, 2012, and Tolliver on July 20,

2012, at a wage of $37.64 per hour.  Garner avers that CSC hired neither for a specific term; they were employees at will.

Garner allegedly observed Hines working slowly and talking excessively, which disrupted other employees.  He warned Hines on July 19, 2012, and again on July 20, recording both warnings in a log.  On July 21, Martin told Garner he had seen Hines working slowly and that Martin did not want slackers on the job. Garner then fired Hines.  Garner subsequently laid off Tolliver and four other employees pursuant to a reduction in force on August 6, 2012; Tolliver was eligible for rehire.

Hines and Tolliver oppose the summary judgment motion without filing formal affidavits.  But they make factual representations in their opposition, signing it under penalty of perjury, without notarization.  Given their pro se status, the court deems their opposition a de facto affidavit.

But the opposition contains virtually no non-conclusory statements supporting employment for a fixed term.  For example, it recites that "Garner had a verbal agreement with Plaintiff Tolliver that work would be available until the month of Dec [sic] and he was not hired as an at will employee."  But the opposition nowhere reveals what Garner actually said that suggests a fixed-term contract.

Hines claims that Martin's vision was blocked, so he could not have witnessed Hines slowly wind an extension cord.  Hines denies excessive talking and counters that he was instructing others how to do their jobs, at defendants' request. Plaintiffs do not explicitly claim defendants ended their employment in bad faith, but rather allege that defendants' reasons for firing them were untrue.

Plaintiffs also filed an audio CD which purportedly recorded Garner telling Hines that Martin fired him.  The CD is unreadable, but the court accepts arguendo that Garner told Hines that Martin was responsible for Hines's firing.

## III. APPLICABLE LAW

A motion for summary judgment "is granted if the pleadings, depositions, or other admissible evidence along with affidavits show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law."[1] A court must "draw all reasonable inferences in favor of the nonmoving party to determine 'whether the parties genuinely dispute any facts material to a viable legal theory and, if not, whether the undisputed facts entitle the movant to judgment as a matter of law.' "[2]

A movant "has the burden of showing that there is an absence of a factual dispute on a material fact."[3] If the movant establishes a prima facie case, "then the nonmoving party must set forth specific facts showing that admissible evidence could be produced that reasonably tends to dispute or contradict the moving party's evidence."[4] In addition, "[a]*ny* admissible evidence in favor of the nonmoving party concerning a material fact is sufficient to render summary judgment inappropriate."[5] But neither "unsupported assumptions and speculation,"[6] nor "[c]onclusory statements in opposing

---

[1] *Greywolf v. Carroll*, 151 P.3d 1234, 1240 (Alaska 2007) (citing Alaska R. Civ. P. 56(c)).

[2] *Id.* (quoting *Preblich v. Zorea*, 996 P.2d 730, 733 (Alaska 2000)).

[3] *Id.* at 1241 (internal citations omitted).

[4] *Id.* (citing *Preblich*, 996 P.2d at 733).

[5] *Id.* (citing *Meyer v. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. N.G.T.*, 994 P.2d 365, 367 (Alaska 1999)) (emphasis added).

[6] *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 661 (Alaska 2006) (internal quotation marks omitted).

affidavits are . . . sufficient to defeat a summary judgment motion."[7] That is, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[8]

Alaskan employees may be hired for a determinable length of time or on an "at-will" basis.[9] An employee "hired on an at-will basis can be fired for any reason that does not violate the implied covenant of good faith and fair dealing."[10] In contrast, a specific-term employee may only be fired for good cause: "employees hired for a specific term may not be discharged before the expiration of the term except for good cause."[11] Good cause may include, for example, "an employee's willful refusal to obey the reasonable instructions of his employer."[12]

"Employment contracts . . . include an implied covenant of good faith and fair dealing. The covenant does not have a precise definition but generally requires employers to treat like employees alike and act in a manner that a reasonable person would regard as fair."[13] The covenant has two primary components: (1) the subjective

---

[7]  *West v. City of St. Paul*, 936 P.2d 136, 140 (Alaska 2006) (internal citations omitted).

[8]  *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[9]  *See Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1130-31 (Alaska 1989).

[10]  *Id.* at 1131.

[11]  *Id.*

[12]  *Cent. Alaska Broad., Inc. v. Bracale*, 637 P.2d 711, 713 (Alaska 1981) (internal citations omitted).

[13]  *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760-61 (Alaska 2008)
(continued...)

component, which "prohibits an employer from terminating an employee for the purpose of depriving the employee of the contract's benefits"; and (2) the objective component, which "prohibits . . . dealing with the employee in a manner that a reasonable person would regard as unfair."[14]

The subjective component of the implied covenant hinges on the "employer's motives."[15] To prevail, an employee must present proof that the employer acted to deprive an employee unfairly "of a benefit contemplated by the employment contract."[16] In contrast, the objective component weighs whether there was disparate employee treatment, discharge on unconstitutional grounds, or a violation of public policy.[17] An employer is not objectively unfair by firing an employee due to the employer's belief that the employee is not adequately performing, even if the employer's belief is mistaken.[18] "[T]here is no breach of the implied covenant . . . even if the employee could subsequently prove that the factual finding of misconduct was a mistake."[19]

---

[13] (...continued)
(internal citations omitted); *see also Crowley v. State, Dep't of Health & Soc. Servs.* 253 P.3d 1226, 1230 (Alaska 2011).

[14] *Mitchell*, 193 P.3d at 761.

[15] *Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 789 (Alaska 2002) (internal citations omitted).

[16] *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999).

[17] *Pitka*, 54 P.3d at 789.

[18] *See Holland v. Union Oil Co. of Cal., Inc.*, 993 P.2d 1026, 1035-36 (Alaska 1999).

[19] *Willard v. Khotol Servs. Corp.*, 171 P.3d 108, 116 (Alaska 2007).

## IV. DISCUSSION

### A. At-will Employment Status

Both Hines and Tolliver had oral contracts with CSC. Tolliver and Hines do not allege that CSC explicitly employed them for a specific length of time, but rather they argue that Garner's reference to work duration implies a specific-term length. CSC responds that this was a "description of potential labor possibilities, not a promise [of continued employment]" [. . . . and] "that Hines and Tolliver were hired as at-will employees."

Hines and Tolliver fail to raise an issue of material fact as to whether their employment was for a definite duration. They do not state precisely what Garner said that would lead a reasonable person to expect guaranteed employment for a definite term. Their subjective conclusion that they were not at-will employees must be supported by admissible evidence. The value to CSC of being able to fire at will weighs against this conclusion. Nothing suggests that Hines and Toliver possessed extraordinary skills irreplaceable on the labor market. It is unreasonable to conclude that Garner's reference to anticipated job duration was more than a non-binding estimate.

### B. Breach Of Covenant Of Good Faith And Fair Dealing

Because Hines was an at-will employee, CSC was free to fire him for any reason not violating the covenant of good faith. Garner and Martin aver that they concluded Hines was not a productive employee. Perceived lack of competence is an adequate basis to terminate an at-will employee. The Supreme Court has held that even an erroneous perception of poor performance is adequate grounds for termination: "If the employee were entitled to [a] jury trial for breach of the implied covenant of good

faith and fair dealing merely by asserting that the charged misconduct was not true, the decision to terminate would be at the discretion of a jury, not the employer."[20]

Hines finds it significant that Garner allegedly told him that Martin, not Garner, was responsible for his termination. But CSC was a subcontractor on Industrial's project and thus needed Industrial's support. CSC could terminate Hines to allay Industrial's concerns.

Tolliver fails to present facts controverting a reduction in force. He speculates that he may have been perceived as an inefficient worker like Hines, but he provides no evidence that Garner or Martin considered him underproductive. But even if they did, and erroneously so, termination would still be CSC's legitimate prerogative.

## V.    ORDER

The court finds that Hines and Tolliver raise no material issue of fact controverting that they were at-will employees [. . . .] Garner and Martin are corporate officers but not plaintiffs' employers, so they cannot have wrongfully terminated Hines and Tolliver. Hines and Tolliver also fail to raise an issue of material fact that CSC contravened the covenant of good faith and fair dealing because of disparate treatment, violation of constitutional rights, or violation of public policy. Accordingly, the court grants defendants' Motion for Summary Judgment.

DATED at Anchorage, Alaska this 1st day of May, 2013.


/s/ John Suddock
Superior Court Judge

---

[20]    *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1036 (Alaska 2003) (internal quotation marks omitted).